IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEBRA A. FLORENCE-SALMON,
      Plaintiff,

vs.                                     Case No.:  3:12cv393/MCR/EMT

SEAN PARKER
and JULIAN GLOVER,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Debra Florence-Salmon ("Florence-Salmon"), proceeding pro se and in forma pauperis ("IFP"), commenced this case on August 15, 2012, by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 1).  Florence-Salmon subsequently filed a Second Amended Complaint (doc. 11), which is the operative pleading.  On June 27, 2013, Defendant Parker ("Parker") filed a motion to dismiss, or in the alternative, for summary judgment (doc. 25).  The court directed Florence-Salmon to respond to the motion (doc. 32), but she has not done so.  Upon review of the evidence in the summary judgment record, it is the opinion of the undersigned that Parker's motion should be granted.  Additionally, Defendant Julian Glover ("Glover") should be dismissed from this action for Florence-Salmon's failure to effect timely service of process.

I.      BACKGROUND AND PROCEDURAL HISTORY

      Florence-Salmon is suing Glover and Parker, both of whom were child protection investigators with the Florida Department of Children and Families ("DCF") at the time of the events underlying the complaint, alleging they illegally entered her home on July 19, 2012, and August 7, 2012, respectively (doc. 11).  She also alleges Parker examined one of her children without her consent and outside her presence (*id.*).  Florence-Salmon claims Defendants' conduct

violated her rights under the Fourth and Fourteenth Amendments (*id.*). She seeks compensatory damages in the amount of $500,000.00, as well as unspecified injunctive relief (*id.*).

On January 15, 2013, the undersigned directed Florence-Salmon to complete certain documents to enable the United States Marshals Service ("USMS") to effect service of process upon Defendants (doc. 13). Florence-Salmon complied with the order, and on March 1, 2013, the court directed the USMS to attempt service at the addresses provided by Florence-Salmon (doc. 17). Process for Defendant Glover was returned to the USMS by the United States Postal Service, marked "Unable to Forward" (doc. 19). Therefore, the court directed Florence-Salmon to provide the court with a sufficient address for the USMS to make reasonable efforts to serve Glover (doc. 20). Florence-Salmon notified the court that she was unsuccessful in locating an address for Defendant Glover (doc. 21). She stated she inquired of DCF, Defendant Glover's last known employer, of Glover's whereabouts, and was advised that Glover is no longer employed by DCF, and Glover's whereabouts were unknown (*id.*).

On May 6, 2013, the court notified Florence-Salmon that Rule 4(m) of the Federal Rules of Civil Procedure provides that if a defendant is not served within 120 after the complaint is filed, the court must dismiss the action without prejudice against that defendant or extend the time for service (doc. 22). The court advised Florence-Salmon that although she was entitled to have the USMS serve process on her behalf, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), it was her obligation to continue to take reasonable steps to identify an address for Defendant Glover (*id.*). *See* <u>Smith v. Belle</u>, 321 F. App'x 838, 845 (11th Cir. 2009) (unpublished) (affirming district court's dismissal of IFP plaintiff's claim against defendant for lack of service of process under Rule 4(m)) (citing <u>Laurence v. Wall</u>, 551 F.3d 92, 94 (1st Cir. 2008) ("The IFP plaintiff is, however, required to cooperate with the court and the United States Marshal in effectuating service, including providing the addresses of the named defendants. . . .")). The court advised Florence-Salmon that if she failed to provide an address for Defendant Glover on or before July 1, 2013, and failed to show good cause for her failure to do so, her claims against Defendant Glover would be subject to dismissal (doc. 22). As of the date of this Report and Recommendation, Florence-Salmon has not provided a service address for Defendant Glover, and she has not shown good cause for her failure to do so. Therefore,

her claim against Defendant Glover should be dismissed without prejudice, pursuant to Fed. R. Civ. P. 4(m).

Parker, on the other hand, has appeared in this case (doc. 18), and on June 28, 2013, he filed a motion to dismiss or for summary judgment, arguing he is immune from suit because he was making a good faith effort to perform responsibilities he was required by state law to perform, specifically, investigating a report of abuse or neglect of one of Florence-Salmon's children, which he was required to do pursuant to chapter 39, Florida Statutes (doc. 25). Parker alternatively argues he is entitled to qualified immunity because (1) he was instructed and required to check on the child's well-being, (2) he believed he had been granted access to the home by an adult related to the homeowner and someone to whom Florence-Salmon had entrusted the care of the children at that time, and (3) no reasonable person under such circumstances would believe he was doing other than the law allowed (*id.*). Parker submitted evidence in support of his arguments, including affidavits from himself, his supervisor, and another child protection investigator (docs. 30, 31). The undersigned issued an order on July 12, 2013, notifying the parties that the court would treat Parker's motion as a motion for summary judgment (doc. 32). The court advised Florence-Salmon of the procedural rule and legal standards governing summary judgment motions, directed her to file a response to the motion on or before July 26, 2013, and advised the parties that the court would take Parker's motion under advisement seven (7) calendar days after July 26, 2013 (*id.*). As of the date of this Report and Recommendation, Florence-Salmon has not filed a response to Parker's motion.

II.    ALLEGATIONS OF THE COMPLAINT AS TO DEFENDANT PARKER

Florence-Salmon alleges that on August 7, 2012, her two oldest children, boys aged 10 and 11, were at home with a babysitter (doc. 11 at 3).[1] She alleges the boys heard Parker and another DCF employee banging on their bedroom window (*id.*). The boys looked out the window, and the DCF employees told them to open the door (*id.*). Florence-Salmon alleges the boys later told her they felt fearful of and intimidated by the DCF employees (*id.*). She alleges one of the boys opened

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

the door to the home, but did not consent to the DCF employees' entry into the home (*id.* at 3–4).[2] Florence-Salmon alleges Parker conducted his investigation "without consent or adult presence" (*id.* at 4). She alleges one of the children had a burn on his waistline, but it had been treated by a doctor the previous day (*id.*). She alleges Parker removed the child's bandage as part of his investigation, and the child told her (Florence-Salmon) he felt uncomfortable having to show his body to a stranger (*id.*).

III.    MATERIAL FACTS

As this case comes before the court on Parker's motion for summary judgment, the court views the facts in the light most favorable to Florence-Salmon, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file. The court resolves all issues of material fact in Florence-Salmon's favor and approaches the facts from her perspective, because the issues concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law. *See* Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (citation omitted). Thus, the operative facts at the summary judgment stage "may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 n.3 (11th Cir. 2000). The court conveys only those facts that are material.

With regard to the factual positions asserted by the parties, the court applies the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] In her previous complaint, Florence-Salmon alleged her children opened the door to Parker and the other investigator, and told Parker, "Let me go get Chelsea [the babysitter]. I will be right back." (doc. 7 at 4). She alleged when her son and Chelsea returned to the front door, Parker and the other investigator were already inside the home (*id.*)

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if Parker's motion and supporting materials—including the facts considered undisputed—show that Parker is entitled to it. *See* Fed. R. Civ. P. 56(e)(2, 3) (2010). Applying these standards, the court conveys the following as the material facts.

Defendant Parker is employed by DCF and was employed by that agency in July and August of 2012, as a child protection investigator ("CPI"), when he was involved with investigations of the Salmon family (doc. 30-1, Affidavit of Sean A. Parker ¶ 1). On August 7, 2012, Parker was sent by Pamela Anderson to investigate a complaint she had received that one of Florence-Salmon's male children had a second degree burn on his chest and was home alone again (Parker Aff. ¶ 2; *see also* doc. 30-4, Investigative Summary). Pamela Anderson is employed by DCF and was employed by that agency in July and August of 2012 as the Operations Program Administrator, Family Safety (doc. 31-1, Affidavit of Pamela Anderson ¶ 1). As part of Anderson's duties, she oversaw the assignment of complaint investigations forwarded by DCF's child abuse hotline, and determined the urgency of each complaint (Anderson Aff. ¶ 2). Anderson received a report indicating one of Florence-Salmon's children had received a second degree burn and was home alone again (Anderson Aff. ¶ 3; *see also* Investigative Summary). Two prior reports of abuse and neglect of Florence-Salmon's children by had been received by DCF on July 16, 2012, and July 18, 2012 (doc. 30-4, Investigative Summary). Anderson dispatched investigators to immediately go to the home where Florence-Salmon lived with the children, which was the paternal grandparents' home, due to the severity of the child's reported injury (Anderson Aff. ¶¶ 3–4).

In response to Pamela Anderson's instruction to immediately make contact with the family, Parker and Paris Dancy, a new CPI whom Parker was training, went to the Salmon home in Cantonment, Florida to investigate the report (Parker Aff. ¶¶ 2–3; doc. 30-1, Affidavit of Paris Dancy ¶ 1). When Parker and Dancy arrived at the Salmon home, they knocked on the door, but no one answered (Parker Aff. ¶ 3; Dancy Aff. ¶ 3). Parker and Dancy heard two children playing in a room next to the front door (*id.*). Parker knocked on the window, and two male children looked out and came outside the home (*id.*). The month prior, Parker had visited the home to investigate allegations of child abuse (Parker Aff. ¶ 3). Parker asked the boys where their mother was, and they indicated she had taken their female siblings to the courthouse (Parker Aff. ¶ 3; Dancy Aff. ¶ 3). At that time, a female came out of the home and identified herself as Chelsea Salmon, an adult niece of the paternal grandparents, Keith and Debra Salmon (*id.*). Chelsea Salmon indicated that Parker and Dancy could go inside the home (Parker Aff. ¶ 3; Dancy Aff. ¶ 4). Parker and Dancy entered the home, and Parker removed a bandage from the injured child's lower stomach to determine the condition of the burn (Parker Aff. ¶ 4; Dancy Aff. ¶ 4). Parker and Dancy also interviewed the boys and Chelsea Salmon, who indicated the boy received the burn while removing hot water and hotdogs from a microwave oven (*id.*). The boys indicated they frequently cook for themselves when they get hungry (*id.*). The burn appeared clean, and the boys indicated that Florence-Salmon had taken the injured boy to the emergency room for treatment after he was burned (*id.*). Parker photographed the burn and completed his report (Parker Aff. ¶ 5). At the time Pamela Anderson dispatched Parker and Dancy to the home, it was unknown that the injured child had been taken for medical attention (Anderson Aff. ¶ 8).

DCF policy requires that investigators have a face-to-face meeting with the child and check his or her injuries (Anderson Aff. ¶ 6). It is also consistent with DCF policy that CPI's enter the home when they believe an adult family member has consented to the entry, especially under urgent circumstances, such as those presented in the complaint regarding Florence-Salmon's child (Anderson Aff. ¶ 7). Ms. Anderson reviewed the notes from the CPI's investigation of child abuse reports received by DCF and discussed the investigation with the CPI's and determined that they acted in accordance with Florida Statutes and DCF policy (Anderson Aff. ¶ 5). DCF's investigation

was closed on September 5, 2012, two weeks after Florence-Salmon filed the instant case (doc. 30-4, Investigative Summary).

IV.    LEGAL STANDARDS

    A.    <u>Summary Judgment Standard</u>

In order to prevail on his motion for summary judgment, Parker must show that Florence-Salmon has no evidence to support her case or present affirmative evidence that Florence-Salmon will be unable to prove her case at trial.  *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If Parker successfully negates an essential element of Florence-Salmon's case, the burden shifts to Florence-Salmon to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  Florence-Salmon must show more than the existence of a "metaphysical doubt" regarding the material facts.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See* <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005).  "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  <u>Young v. City of Palm Bay, Fla.</u>, 358 F.3d 859, 860 (11th Cir. 2004); *see also* <u>Celotex Corp.</u>, 477 U.S. at 324.  Florence-Salmon must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* <u>Celotex Corp.</u>, *supra*; <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); <u>Hammer v. Slater</u>, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Florence-Salmon in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to her. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Florence-Salmon still bears the burden of coming forward with sufficient evidence of every element that she must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

      B.     Fourth Amendment Standard

The Fourth Amendment, as applied to the states by way of the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. 4. The Fourth Amendment's protection "unquestionably extends beyond criminal investigations to civil and administrative contexts." Lenz v. Winburn, 51 F.3d 1540, 1548 n.7 (11th Cir. 1995) (citing Soldal v. Cook County, Ill., 506 U.S. 56, 66 n.11, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992), O'Connor v. Ortega, 480 U.S. 709, 714, 107 S. Ct. 1492, 94 L. Ed. 2d 714 (1987), and Camara v. Municipal Court, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967)). It is well-settled that warrantless entry into a home is presumptively unreasonable and in violation of the Fourth Amendment, absent consent or exigent circumstances. *See* Payton v. New York, 445 U.S. 573, 587, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); McClish v. Nugent, 483 F.3d 1231, 1248 (11th Cir. 2007); Lenz, 51 F.3d at 1548.

The Fourth Amendment recognizes a valid warrantless entry when the police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, common authority over the property, and no present co-tenant objects. *See* Illinois v. Rodriguez, 497 U.S. 177, 185–86, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990); Untied States v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Third-party consent may be valid, even without mutual use of the property, if the consenting party has control of the property as the express or implied agent of the owner. *See* Rodriguez, 497 U.S. at 185–86. Further, a warrantless entry is valid when law enforcement personnel rely on a person's "apparent authority" to consent if the facts available to the officer at

the time of the entry warrant a person of reasonable caution to believe that the consenting party has authority over the premises.  *Id.* at 188 (citation omitted).

Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action."  United States v. Ramos, 933 F.2d 968, 972 (11th Cir. 1991).  One exigency obviating the requirement of a warrant is "the need to assist persons who are seriously injured or threatened with such injury."  Brigham City v. Stuart, 547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006).  "[P]olice may enter a residence without a warrant if an objectively reasonable basis exists for the [police] to believe that there is an immediate need for police assistance for the protection of life."  Seibert v. State, 923 So. 2d 460, 468 (Fla. 2006).  "In other words, where safety is threatened and time is of the essence, . . . 'the need to protect life and to prevent serious bodily injury provides justification for an otherwise invalid entry.'"  Riggs v. State, 918 So. 2d 274, 279 (Fla. 2005) (quoting Arango v. State, 411 So. 2d 172, 174 (Fla. 1982)).

In Lenz v. Winburn, 51 F.3d 1540 (11th Cir. 1995), a child's grandparents brought a § 1983 action against a child protection investigator for allegedly violating their Fourth Amendment rights when the child protection investigator entered their home and retrieved belongings of the child when the child was being removed from her father's custody after the child protection investigator concluded the child was being abused.  *See* Lenz, 51 F.3d at 1543, 1550–51.  The Eleventh Circuit first concluded that the child protection investigator was acting within her discretionary authority when she entered the home and collected the child's personal belongings, as Florida law permits state child protection investigators to take children into protective custody if an investigator determines it necessary to protect the child.  *See* Lenz, 51 F.3d at 1551.  Then, the Eleventh Circuit examined whether the child protection investigator violated a clearly established right by entering the plaintiffs' home and seizing some of the child's belongings.  *Id.*  In finding that the child protection investigator was entitled to qualified immunity, the court stated:

> The Fourth Amendment prohibits only unreasonable searches.  Unreasonableness is determined by a case-by-case balancing of the state's interests against the individual's. [citations omitted]  In the Fourth Amendment context, therefore, the law of qualified immunity provides that [the child protection investigator] need not predict whether the interest of the state in retrieving personal effects for a child's comfort will be deemed to outweigh the privacy interests of the suspected abusers.

> Neither must she err on the side of caution and assume that such searches are unreasonable. [citation omitted].

Lenz, 51 F.3d at 1551–52. The Eleventh Circuit determined that the child protection investigator was entitled to qualified immunity on the Fourth Amendment claim regarding entry into the home. *Id.*

### C.    Qualified Immunity

The Supreme Court has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). This doctrine is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

A government official acts within his or her discretionary authority if the actions were (1) "undertaken pursuant to the performance of [his or her] duties," and (2) "within the scope of [his or her] authority." Lenz, 51 F.3d at 1545 (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)). The determination that an officer was acting within her discretionary authority is a "low hurdle" to clear. *See* Jordan v. Doe, 38 F.3d 1559 (11th Cir. 1994). Once this determination has been made, the court must decide whether the defendant violated a clearly established federal right.

In Saucier v. Katz, the Supreme Court mandated a two-step process for lower courts to follow in resolving qualified immunity claims. 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). First, the court had to decide whether the facts that the plaintiff alleged showed a violation of a constitutional right. *Id.* Second, if the plaintiff satisfied the first step, the court had to determine whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (quoting Saucier, 533 U.S. at 201, 121 S. Ct. 2151). However, in Pearson, the Court revisited Saucier's mandatory two-step inquiry and held that while the Saucier process is often appropriate, "it should no longer be regarded as mandatory"; rather, "[t]he judges of the district courts and the court of appeals should be permitted to exercise their

sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

Finally, "[f]amily relationships are an area of state concern, and the state has a compelling interest in removing children who may be abused." Foy v. Holston, 94 F.3d 1528, 1536 (11th Cir. 1996). Indeed, the Eleventh Circuit recognized that "the right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Id.* at 1536–37. For that reason, "it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity." *Id.* at 1537.

V.      ANALYSIS

Initially, Florence-Salmon may not recover monetary damages against Parker in his official capacity. The Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. *See* Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Gamble v. Florida Dep't of Health and Rehabilitative Serv., 779 F.2d 1509 (11th Cir. 1986). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits Florence-Salmon's suit against DCF in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); *see also* Fla. Stat. § 39.203 (granting immunity from civil liability to any person, official, or institution participating in good faith in any act authorized or required by Chapter 39). Therefore, to the extent Florence-Salmon seeks monetary damages against Parker in his official capacity, her claims are barred by the Eleventh Amendment. *See* Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684, 102 S. Ct. 3304, 3314, 73 L. Ed. 2d 1057 (1982); Gamble, 779 F.2d at 1512.

Additionally, Parker is entitled to qualified immunity from Florence-Salmon's damages claim against him in his individual capacity. Under Florida law, DCF and its agents and employees have wide-ranging duties and responsibilities where there are reports that a child's welfare is in jeopardy:

> (1) Upon receiving a report of known or suspected child abuse, abandonment, or neglect, or that a child is in need of supervision and care and has no parent, legal

custodian, or responsible adult relative immediately known and available to provide supervision and care, the central abuse hotline shall determine if the report requires an immediate onsite protective investigation. For reports requiring an immediate onsite protective investigation, the central abuse hotline shall immediately notify the department's designated district staff responsible for protective investigations to ensure that an onsite investigation is promptly initiated.

. . . .

(7) An assessment of safety and the perceived needs for the child and family shall be conducted in a manner that is sensitive to the social, economic, and cultural environment of the family. This assessment must include a face-to-face interview with the child, other siblings, parents, and other adults in the household and an onsite assessment of the child's residence.

(8) Protective investigations shall be performed by the department or its agent.

(9)(a) For each report received from the central abuse hotline and accepted for investigation, the department or the sheriff providing child protective investigative services under s. 39.3065, shall perform the following child protective investigation activities to determine child safety:

1. Conduct a review of all relevant, available information specific to the child and family and alleged maltreatment; family child welfare history; local, state, and federal criminal records checks; and requests for law enforcement assistance provided by the abuse hotline. Based on a review of available information, including the allegations in the current report, a determination shall be made as to whether immediate consultation should occur with law enforcement, the child protection team, a domestic violence shelter or advocate, or a substance abuse or mental health professional. Such consultations should include discussion as to whether a joint response is necessary and feasible. A determination shall be made as to whether the person making the report should be contacted before the face-to-face interviews with the child and family members.

2. Conduct face-to-face interviews with the child; other siblings, if any; and the parents, legal custodians, or caregivers.

3. Assess the child's residence, including a determination of the composition of the family and household, including the name, address, date of birth, social security number, sex, and race of each child named in the report; any siblings or other children in the same household or in the care of the same adults; the parents, legal custodians, or caregivers; and any other adults in the same household.

4. Determine whether there is any indication that any child in the family or household has been abused, abandoned, or neglected; the nature and extent of present

or prior injuries, abuse, or neglect, and any evidence thereof; and a determination as to the person or persons apparently responsible for the abuse, abandonment, or neglect, including the name, address, date of birth, social security number, sex, and race of each such person.

5.  Complete assessment of immediate child safety for each child based on available records, interviews, and observations with all persons named in subparagraph 2. and appropriate collateral contacts, which may include other professionals.   The department's child protection investigators are hereby designated a criminal justice agency for the purpose of accessing criminal justice information to be used for enforcing this state's laws concerning the crimes of child abuse, abandonment, and neglect.  This information shall be used solely for purposes supporting the detection, apprehension, prosecution, pretrial release, posttrial release, or rehabilitation of criminal offenders or persons accused of the crimes of child abuse, abandonment, or neglect and may not be further disseminated or used for any other purpose.

6.   Document the present and impending dangers to each child based on the identification of inadequate protective capacity through utilization of a standardized safety assessment instrument.
. . . .
(13) Onsite visits and face-to-face interviews with the child or family shall be unannounced unless it is determined by the department or its agent or contract provider that such unannounced visit would threaten the safety of the child.

Fla. Stat. § 39.301(1), (7), (8), (9), (13).

The record demonstrates Parker's actions were undertaken pursuant to the performance of his duties as a CPI.  Further, his actions were within the scope of his authority as a CPI.  Florida law required Parker to conduct an unannounced face-to-face interview with the child, other siblings, and parents, caregivers, and other adults in the household, and conduct an onsite assessment of the child's residence and the child's present or prior injuries.  *See* Fla. Stat. § 39.301(7), (9)(a). Therefore, Parker was acting within his discretionary authority when he entered the home and assessed the child's injury.

Further, the Fourth Amendment right at issue was not "clearly established" at the time of Parker's alleged misconduct.  In determining whether a right is "clearly established" for qualified immunity purposes, a case directly on point is not required, but existing precedent must have placed the constitutional question "beyond debate."  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).  Clearly established law is not defined at a high level of generality; for example,

the general proposition that a warrantless entry into a home violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. *See* Ashcroft, 131 S. Ct. at 2085.  When, as in the instant case, there is no case law with the broad holding that the warrantless entry into a home to investigate a report of abuse or neglect of a child violates the Fourth Amendment, the court must look to precedent that is tied to that particular conduct.  *See* Vinyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002).  In determining whether existing case law provided that the particular conduct was unlawful "beyond debate," the court should look to decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the Supreme Court of Florida.  *See id.*

In the instant case, Parker reasonably relied on the consent of Chelsea Salmon to enter the home.  Ms. Salmon was the only adult in the home, with apparent authority over the premises and Florence-Salmon's children.  A person of reasonable caution with these facts available would believe that Chelsea Salmon had authority to consent to Parker's entering the home.  Further, Parker's supervisor, Ms. Anderson, had instructed Parker to immediately go to the home and check on the child's welfare, based upon the severity of the report received by the abuse hotline that the child had been burned and was home alone.  Florida law required Parker to conduct a face-to-face interview with the child, his siblings, and his caregiver, assess the child's residence, and determine the nature and extent of the child's present or prior injuries.  Here, as in Lenz, Parker was obligated under state law to assess the validity of the report concerning the welfare of Florence-Salmon's minor child and to take appropriate action.  Therefore, at the time of Parker's conduct, it was not sufficiently clear that the Fourth Amendment prohibited as unreasonable an entry such as Parker's; nor was it sufficiently clear that Parker's examination of Florence-Salmon's child without her consent and outside her presence violated the Fourth Amendment.  *See* Loftus v. Clark-Moore, 690 F.3d 1200, 1205–06 (11th Cir. 2012) (dismissing parent's claim that child protective services investigator violated child's constitutional right to be free from unreasonable searches and seizures by "brutally interrogat[ing]" child without parent's permission; claim did not state a violation of the Fourth Amendment or any other constitutional right); Lenz, 51 F.3d at 1551–52; *see also, e.g.,* Ross v. State of Alabama, 15 F. Supp. 2d 1173, 1183 (M.D. Ala. 1998) (child protective services worker was entitled to qualified immunity on parents' Fourth Amendment claim of unreasonable search and

seizure based upon worker's entry into residence, knowing that voluntary permission to enter had not been granted, and detention of minor children; worker was obligated under state law to assess validity of report concerning parents' minor children's welfare and to take appropriate action; therefore, it was not sufficiently clear that worker's uninvited entry into home was unreasonable under Fourth Amendment, nor was it sufficiently clear that worker's alleged detention of minor children was unreasonable in violation of Fourth Amendment). Therefore, Parker is entitled to qualified immunity from Florence-Salmon's claims for monetary damages against him in his individual capacity.[3]

## VI. CONCLUSION

As to Defendant Glover, Florence-Salmon failed to serve the complaint within the time frame established by Rule 4(m) and the court's orders. Further, despite the court's providing her an opportunity to show good cause for her failure to effect timely service (*see* doc. 22), she failed to do so. Therefore, Florence-Salmon's claim against Defendant Glover should be dismissed without prejudice. As to Defendant Parker, viewing the evidence in the light most favorable to Florence-Salmon, Parker has shown that there is no genuine dispute as to any material fact, and he is entitled to judgment as a matter of law. Therefore, Parker's motion for summary judgment should be granted.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Defendant Parker's motion to dismiss or for summary judgment (doc. 25) be **GRANTED** and Plaintiff's claims against Parker be **DISMISSED with prejudice**.

2.      That Plaintiff's claims against Defendant Glover be **DISMISSED without prejudice** for Plaintiff's failure to effect timely service of the complaint.

---

[3] Qualified immunity does not apply to Florence-Salmon's claim for injunctive relief. *See* D'Aguanno v. Gallagher, 50 F.3d 877, 879 (11th Cir. 1995) (citation omitted). However, her claim for unspecified injunctive relief, even when viewed in the context of the allegations of the complaint, fails to show she is entitled to the extraordinary remedy of injunctive relief. The court cannot issue a general injunction barring Parker from violating the law at some point in the future. *See* SEC v. Smyth, 420 F.3d 1225, 1233 (11th Cir. 2005) ("This circuit has repeatedly held that 'obey the law' injunctions are unenforceable."). Further, the allegations of the complaint fail to show that Florence-Salmon would suffer any continuing, present adverse effects resulting from Parker's performance of his investigative duties. Moreover, Florence-Salmon lacks standing to assert the constitutional rights of others. Therefore, she failed to show she is entitled to injunctive relief.

At Pensacola, Florida, this 19th day of August 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).